FILED IN MY OFFICE
DISTRICT COURT CLERK
6/24/2016 3:58:35 PM
STEPHEN T. PACHECO
Maureen Naranjo

**STATE OF NEW MEXICO**
**COUNTY OF RIO ARRIBA**
**FIRST JUDICIAL DISTRICT COURT**

**PATRICIA THOMPSON,**

     **Plaintiff,**

**against**
                             **Cause No.**     D-117-CV-2016-00221
                                      Case assigned to Attrep, Jennifer L.

**AVON PRODUCTS, INC.; THE TRAVELERS**
**COMPANIES, dba Travelers Insurance Company;**
**GE CAPITAL FLEET SERVICES dba Gelco Corporation;**
**and YET-TO-BE-IDENTIFIED BUSINESS**
**ENTITY(IES) AND/OR INDIVIDUAL(S),**

     **Defendants.**

**COMPLAINT FOR BAD FAITH BREACH OF CONTRACT AND THE COVENANT OF**
**GOOD FAITH AND FAIR DEALING, TORTIOUS INTERFERENCE WITH**
**CONTRACT, INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS,**
**NEGLIGENCE, BREACH OF CONTRACT AND DUTY TO THIRD PARTY**
**BENEFICIARY, _PRIMA FACIE_ TORT, PROMISSORY ESTOPPEL AND UNJUST**
**ENRICHMENT, FRAUDULENT MISREPRESENTATION AND CONCEALMENT,**
**INSURANCE BAD FAITH AND VIOLATION OF THE NEW MEXICO UNFAIR**
**INSURANCE PRACTICES ACT, VIOLATION OF THE NEW MEXICO UNFAIR**
**TRADE PRACTICES ACT, CIVIL CONSPIRACY AND FOR**
**PUNITIVE DAMAGES AND INJUNCTIVE RELIEF**

     **COMES NOW** Plaintiff, Patricia Thompson, by and through her counsel, Merit Bennett of

The Bennett Law Group, and for her Complaint against Defendants states as follows:

     1.     Plaintiff Patricia Thompson (hereinafter "Ms. Thompson") is a resident of Rio Arriba

County, New Mexico.

     2.     Defendant Avon Products, Inc., (hereinafter "Avon") is a company licensed to do and

doing business in the State of New Mexico.  Said Defendant is also the _de facto_ owner via its agent,

Defendant GE Capital Fleet Services dba GELCO corporation (hereinafter "GELCO"), and the



EXHIBIT

1

insured of the subject vehicle (hereinafter the "vehicle," "subject vehicle" or the "Avon vehicle") operated by Ms. Thompson when the subject claim set forth hereinbelow arose.

3.      Defendant The Travelers Companies dba Travelers Insurance Company, aka Travelers, (hereinafter "Travelers") is a foreign corporation with its principal office in New York and was, at all times herein, the insurance company which insured the Avon vehicle owned by GELCO and operated by Ms. Thompson.

4.      Defendant GE Capital Fleet Services dba GELCO corporation (hereinafter "GELCO"), is a Minnesota-based corporation and was, at all times herein, the owner of the Avon vehicle, pursuant to a fleet services contract with Avon.

5.      The "Yet-to-be-identified Business Entity(ies) and/or Individual(s)" (hereinafter also referred to individually and collectively as "Liable Defendants") are any unknown insurer(s) of the liability of Avon herein or the subject vehicle and/or any unknown employee(s), representative(s), subcontractor(s) and/or agent(s) of Avon and/or Travelers and/or GELCO who may be liable to Ms. Thompson for the wrongdoing described herein.

6.      At all times herein, Ms. Thompson was an employee of Avon until on or about April 15, 2015.  On or about the time of her hiring by Avon in September, 2010, Avon provided Ms. Thompson with the use of a vehicle owned by and leased from GELCO (the "Avon vehicle" or "vehicle") with which she was to utilize while conducting Avon's business.  Avon also provided and partially paid for the insurance coverage for said vehicle purchased from Travelers, which initially included uninsured motorist coverage with a limit of at least $300,000.00 per accident, and such accommodation constituted a promise by Avon to Ms. Thompson that the vehicle would always be covered with uninsured/underinsured motorist insurance protection purchased by Avon with a limit

2

of at least $300,000.00, in order to protect Ms. Thompson from uninsured/underinsured motorists who may cause her to suffer injury and consequent financial and other harm.   At all times after agreeing to drive Avon's vehicle during her conduct of Avon's business, Ms. Thompson reasonably believed that Avon, Travelers and/or GELCO continued to maintain uninsured/underinsured motorist coverage on said vehicle at the initial level represented to her.  Avon, Travelers and GELCO owed Ms. Thompson a duty to inform Ms. Thompson of any change in or loss of said coverage, so that Ms. Thompson could acquire comparable substitute coverage.

7.    In  fact, Defendant Avon created a higher standard of care for what insurance coverage would be maintained for its employees when Avon offered Plaintiff and those employees similarly situated to Plaintiff a choice between utilizing one of Defendant's vehicles with full coverage and maintenance for $135 per month deducted from Ms. Thompson's paycheck, or Ms. Thompson could use her own automobile.  In order to use her own vehicle, Ms. Thompson would have been required to have had the same limits of automobile insurance coverage and own and maintain a vehicle that was no more than two years old, with no more than 20,000 miles of use. All employees agreed that this second choice was a false choice, as an employee would quickly drive too many miles for their vehicle to qualify for coverage.  This made this second "option" untenable. Therefore, Ms. Thompson was essentially forced to make the choice to either accept the company car, believing it had certain limits of uninsured motorist coverage, or to not be employed by Avon. In other words, Avon forced her to accept its car with it represented limits of uninsured motorist coverage, but then later unilaterally reduced the coverage without informing Ms. Thompson. This tactic is known as "bait-and-switch." Knowing that the Avon car Ms. Thompson utilized was covered by adequately high limits of coverage is one of the primary reasons why Ms. Thompson

3

made the decision to be employed by Avon and utilize Avon's vehicle. Had Ms. Thompson known that Avon would later be dropping her vehicle's uninsured motorist coverage without her knowledge or permission, she would have either paid for substitute uninsured motorist coverage herself or left the employ of Avon.

8.      When Ms. Thompson had any issues with the car, she was directed by Avon to call GE Capital Fleet Services (GELCO) to repair or maintain the vehicle.

9.      During her employment with Avon, Ms. Thompson often worked seven days a week and then often 13-14 hours a day, and virtually all of her work involved travel in the company vehicle.

10.      On or about August 10, 2012, Ms. Thompson's training manager, Ruth Gomez, asked Ms. Thompson to take over utility payments for Avon's training center. Ms. Gomez stated that this was only temporary and that Ms. Thompson would be reimbursed. To date, even after her termination, Ms. Thompson is still paying for these monthly utility bills, despite after asking Avon repeatedly to take over these payments and reimburse Ms. Thompson. Avon has remained silent and has refused to comply. To date, Ms. Thompson is still receiving these bills and paying them in order to not jeopardize her good credit.

11.      On or about October 15, 2014, while engaged in the employ of Avon, Ms. Thompson was injured in Santa Fe County when the Avon vehicle she was operating was struck by a vehicle negligently operated by Donald Smith ("Mr. Smith"). This accident left Ms. Thompson permanently disabled and unable to continue to work for Avon, resulting in Avon's unilateral termination of her employment with Avon.

4

12.     Upon settlement of her claim against Mr. Smith for the $25,000.00 limits of his available coverage, Ms. Thompson applied to Avon's (and therefore also to her) insurer, Defendant Travelers, for additional compensation pursuant to Travelers' underinsured motorist coverage purchased by Avon to protect its drivers, specifically such as Ms. Thompson, from any damages they might sustain in motor vehicle collisions caused by underinsured motorists, such as has occurred in this case.

13.     To Ms. Thompson's shock and surprise, Travelers denied underinsured ("UIM") coverage to Ms. Thompson, stating that, effective as of June 1, 2014 (four and one-half months before the subject collision), **"Our insured [Avon] has rejected the UIM claim in reference to Ms. Thompson"** ... because ... **"Avon's Commercial Auto Policy delete[d] New Mexico Underinsured/Uninsured motorist coverage off the policy as of 7/14/14."** *See* attached email correspondence from Travelers dated January 26, 2016, along with its attached Change Endorsement:

> **"New Mexico - Rejection of Uninsured Motorists Coverage,"** which states:
> **This endorsement serves as verification that the Named Insured [Avon] was offered Uninsured Motorists Coverage at a limit equal to the policy liability limit and the Named Insured has elected in writing to reject Uninsured Motorists coverage in a limit equal to the policy liability limit [as required by New Mexico law].** *See* **Exhibit A** attached hereto and incorporated herein.

14.     However, in contravention of New Mexico law, neither Travelers nor GELCO ever procured a signed waiver of UIM coverage from Avon, and certainly no signed waiver was procured by Travelers, GELCO or Avon from Ms. Thompson, the driver who had been promised by Avon full insurance coverage of the vehicle, to include uninsured/underinsured motorist coverage with limits of at least $300,000.00, and who was an intended third-party beneficiary and co-insured of Avon's

UIM policy issued by Travelers to GELCO.   (Nor was the fact nor effect of such a waiver ever explained to Ms. Thompson by either Avon, GELCO or Travelers.)  Should Travelers be able to produce a waiver signed by Avon and/or GELCO, then Avon and/or GELCO have also assumed full responsibility for Ms. Thompson's injuries, up to and including at least $300,000.00, less an offset of the liability carrier's coverage in the amount of $25,000.00.

15.     Avon breached its employment contract and terms of Ms. Thompson's agreement to use the company vehicle and pay monthly for said vehicle by failing to notify any of its drivers in New Mexico, including specifically Ms. Thompson, that Avon (or GELCO) had waived uninsured motorist insurance coverage for all of the vehicles operated by Avon's employees, including specifically Ms. Thompson, and/or by failing to notify Ms. Thompson of the consequence of such waiver to Ms. Thompson personally should she be involved in an automobile collision with an uninsured or underinsured motorist.  Avon had no other insurance policy in place to provide protection to its drivers in lieu of UIM auto insurance coverage, even thought the majority of time spent on the job for many of its employees is spent traveling in their company vehicles.  Said breach of contract has therefore caused Ms. Thompson to suffer the damage and harm alleged herein.

16.     Further, when Avon allegedly waived UM/UIM coverage for all of its New Mexico employees without their knowledge, it did not reduce the payments made to Avon by its employees for their company vehicles, but instead increased said payments, thereby becoming unjustly enriched. As a direct and proximate result of said collision, Ms. Thompson suffered physical injury and other consequential damages.

17.     As a direct result of the automobile collision, which occurred while Ms. Thompson was acting in the course and scope of her employment with Avon, Ms. Thompson has incurred and

suffered and will continue to incur and suffer, among other things, medical expenses, pain and suffering, loss of enjoyment of life, permanent physical impairment and economic loss, to include the loss of her employment with Avon.   Further, Ms. Thompson has continued to be held responsible for paying out-of-pocket expenses for Avon's Training Center in Santa Fe, even after being terminated from her employment with Avon. Ms. Thompson made these payments in good faith, believing she would be reimbursed through Avon's promised underinsured motorist coverage.

18.     Pursuant to the New Mexico Mandatory Financial Responsibility Act, NMSA 1978 Section 66-5-201, *et seq.*, and *Raskob v. Sanchez*, 126 NM 394, 970 P.2d 580 (1988), Travelers, as Avon's (and Ms. Thompson's) automobile insurer, is liable to Ms. Thompson for her resulting damages.

19.     Pursuant to the New Mexico Unfair Insurance Practices Act, N.M.S.A. 1978, Section 59A-16-20, and *Hovet v. Lujan and Allstate*, 133 NM 611, 66 P.3d 980 (Ct.App. 2003), Ms. Thompson hereby makes a claim for third-party bad faith and punitive damages against Travelers, Avon and GELCO for their respective failures to provide underinsured motorist coverage for Ms. Thompson reasonably and in good faith and for their failure to insure that Ms. Thompson was given full and fair warning that Avon and/or Travelers and/or GELCO was cancelling her vehicle's UIM coverage, in order to enable Ms. Thompson to acquire alternate UIM coverage or to enter into a separate contract with Travelers for replacement UIM coverage.

7

## COUNT I
**Bad Faith Breach of Contract and Breach of the Covenant of Good Faith and Fair Dealing**
**(Against Defendant Avon)**

20.     Plaintiff incorporates and re-alleges Paragraphs 1 through 19 above as if fully set forth herein.

21.     Ms. Thompson was employed by Avon, pursuant to a contract of employment that required Avon to provide uninsured/underinsured motorist coverage on the vehicle utilized by Ms. Thompson while engaged in the course and scope of her employment with Avon.   There was also implied in said contract of employment with Avon a covenant of good faith and fair dealing which required Ms. Thompson to be treated fairly and with respect and in accordance with state and federal law and public policy. This contract and covenant were both breached by Avon as described above, when Avon unilaterally terminated the uninsured/underinsured motorist coverage on the vehicle driven by Ms. Thompson, without providing advance and/or informed notice to Ms. Thompson, while she was engaged in the course and scope of her employment with Avon, which insurance coverage was an integral part of her employment agreement with Avon, thereby entitling Ms. Thompson to recover from Defendant Avon all of her damages resulting from the subject collision.

22.     Avon's breach of Ms. Thompson's contract of employment and its implied covenant of good faith and fair dealing was intentional, willful, malicious, reckless, wanton, grossly negligent and/or deliberately indifferent to her rights and feelings and was accomplished in bad faith, thereby entitling her to an additional award of punitive damages.

23.     As a direct result of Avon's breach of her employment contract and its covenant of good faith and fair dealing, Ms. Thompson has suffered and will continue to suffer economic damages and severe and extreme emotional distress, as well as other related damages.

8

**WHEREFORE**, on Count I, Ms. Thompson requests that judgment be entered against Avon, awarding her compensatory and punitive damages, together with pre-judgment interest, post-judgment interest, costs and attorneys' fees and such further relief as the Court deems proper.

## COUNT II
### Tortious Interference with Contract of Employment
### (Yet-to-be Identified Avon Agents and/or Employees of
### Avon and/or Travelers and/or GELCO)

24.     Plaintiff incorporates and re-alleges Paragraphs 1 through 23 above as if fully set forth herein.

25.     Ms. Thompson had a contract of employment with Avon of which one or more of the individual Defendants and/or Travelers Insurance procured its breach by effectuating a waiver of uninsured/underinsured motorist coverage under the Travelers Insurance Policy in New Mexico for employees of Avon, such as Ms. Thompson, without prior notice to Avon's employees such as Ms. Thompson (or without adequate explanation of the significance of such waiver) to afford them with an opportunity to procure comparable replacement coverage, leaving Avon's employees, and specifically Ms. Thompson, exposed to irreparable harm during the performance of their employment duties without any recourse for remunerative compensation.

26.     These Defendants therefore breached their duty to Ms. Thompson to not interfere with her contract of employment, through any artifice or means whatsoever.

27.     These Defendants are therefore jointly and severally liable to Ms. Thompson for the consequences of their tortious misconduct, to include specifically the damage suffered by Ms. Thompson as a result of the subject collision.

28.     These Defendants' interference with Ms. Thompson's contract was intentional, willful, malicious, reckless, wanton, grossly negligent and/or deliberately indifferent to Ms. Thompson's rights and feelings, thereby entitling Ms. Thompson to an additional award of punitive damages.

29.     As a result of these Defendants' tortious interference with Ms. Thompson's employment contract, Ms. Thompson has suffered and will continue to suffer economic damages and severe and extreme emotional distress, as well as other related damages.

**WHEREFORE**, on Count II, Ms. Thompson requests that judgment be entered against Defendants, jointly and/or severally, awarding her compensatory and punitive damages, together with pre-judgment interest, post-judgment interest, costs and attorneys' fees and such further relief as the Court deems proper.

### COUNT III
### Intentional Infliction of Emotional Distress
### (All Defendants)

30.     Plaintiff incorporates and re-alleges Paragraphs 1 through 29 above as if fully set forth herein.

31.     The Defendants intended (or acted with reckless indifference for the consequences of their acts and/or omissions) and/or knew or should have known that their acts and/ot omissions as described above would cause Ms. Thompson to suffer severe and extreme emotional distress.

32.     As a result of this infliction of emotional distress upon Ms. Thompson by the Defendants, Ms. Thompson has suffered embarrassment, humiliation, loss of her preferred career, economic damages and severe and extreme emotional distress, for which the Defendants are jointly and severally liable to Ms. Thompson.

10

33.     This infliction of emotional distress upon Ms. Thompson was undertaken intentionally, willfully, maliciously, recklessly, wantonly and/or with gross negligence and/or with deliberate indifference to her rights and feelings, thereby entitling her to an additional award of punitive damages.

**WHEREFORE**, on Count III, Ms. Thompson requests that judgment be entered against all Defendants, jointly and/or severally, awarding her compensatory and punitive damages, together with pre-judgment interest, post-judgment interest, costs and attorneys' fees and such further relief as the Court deems proper.

### COUNT IV
### Negligence
### (Defendants Avon, GELCO and Travelers)

34.     Plaintiff  incorporates and re-alleges Paragraphs 1 through 33 above as if fully set forth herein.

35.     Defendants Avon, GELCO and Travelers all owed Ms. Thompson duties to insure that she and the motor vehicle she was operating were insured with adequate uninsured/underinsured motorist insurance coverage to protect Ms. Thompson against the misconduct of the drivers of other vehicles while Ms. Thompson was employed by and engaged in the business of Defendant Avon on the roadways of New Mexico and/or to insure that Ms. Thompson was fully advised of any changes in such automobile insurance coverage and/or of the effect of such changes which could or would adversely affect her ability to receive compensation for any damages resulting from any injuries she might sustain in an on-the-job motor vehicle collision in the event the liable driver was uninsured or underinsured. By failing to maintain the uninsured/underinsured motorist insurance coverage that was in place at the outset of her employment with Defendant Avon and/or by failing to provide her

11

with notice of the cancellation of said insurance coverage and/or the effect of such cancellation, said Defendants breached such duties.   Said breaches of duties were a proximate cause of Ms. Thompson's damages claimed herein against said Defendants, and said breaches of duties were accomplished by one or both of said Defendants intentionally, willfully, maliciously, recklessly, wantonly and/or with gross negligence and/or with deliberate indifference to her rights and feelings, thereby entitling her to an additional award of punitive damages.

**WHEREFORE**, on Count IV, Ms. Thompson requests that judgment be entered against Defendants, jointly and/or severally, awarding her compensatory and punitive damages, together with pre-judgment interest, post-judgment interest, costs and attorneys' fees and such further relief as the Court deems proper.

**COUNT V**
**Breach of Contract/ Duty to Third Party Beneficiary**
**(Defendants Avon, Travelers and GELCO)**

36.     Plaintiff  incorporates and re-alleges Paragraphs 1 through 35 above as if fully set forth herein.

37.     Defendants entered into an express contract to provide liability and uninsured motorist coverage to Plaintiff. Ms. Thompson was a third party beneficiary of the auto insurance policy issued by Defendant Travelers to Defendant Avon, which covered the subject vehicle owned by GELCO. All Defendants knew and intended that Plaintiff would benefit from the contract and Plaintiff would be harmed by any breach of the contract by any Defendant.

38.     Defendants Travelers, Avon and GELCO therefore owed a duty to Ms. Thompson to insure that said insurance policy at all times was in force for the benefit and protection of Ms. Thompson as a third party beneficiary, to include a duty to provide advance notice to Ms. Thompson

12

when any change in such insurance policy was to be made and of the effect of any such change which could in any way be to the detriment of the interests of Ms. Thompson.

39.     These Defendants therefore breached such contract and duties therein when one or both of them caused, ratified or acquiesced to the deletion of the uninsured/underinsured motorist coverage benefit from said insurance policy without providing Ms. Thompson with prior written notice of said deletion or prior written notice of the consequence of said deletion to Ms. Thompson's best interests.

40.     This/these breaches were accomplished by these Defendants intentionally, willfully, wantonly, maliciously, recklessly, and/or with gross negligence and/or deliberate indifferent to Ms. Thompson's rights and feelings and was/were accomplished in bad faith, thereby entitling her to an additional award of punitive damages. Plaintiff suffered damage as direct and proximate result of these breaches.

**WHEREFORE**, on Count V, Ms. Thompson requests that judgment be entered against Defendants, jointly and/or severally, awarding her compensatory and punitive damages, together with pre-judgment interest, post-judgment interest, costs and attorneys' fees and such further relief as the Court deems proper.

**COUNT VI**
***Prima Facie* Tort**
**(All Defendants)**

41.     Plaintiff incorporates and re-alleges Paragraphs 1 through 40 above and 44-66 below, as if fully set forth herein.

13

42.     The actions/inactions of Defendants described above and/or below caused Ms. Thompson to suffer harm and damage for which all of the Defendants are jointly and/or severally liable.

43.     This harm and damage inflicted upon Ms. Thompson were undertaken intentionally, willfully, maliciously, recklessly, wantonly and/or with gross negligence and/or with deliberate indifference to her rights and feelings, thereby entitling her to an additional award of punitive damages.

**WHEREFORE**, on Count VI, Ms. Thompson requests that judgment be entered against Defendants, jointly and/or severally, awarding her compensatory and punitive damages, together with pre-judgment interest, post-judgment interest, costs and attorneys' fees and such further relief as the Court deems proper.

## COUNT VII
### Insurance Bad Faith and Violation of the New Mexico Unfair Insurance Practices Act
### (Defendant Travelers and Liable Defendants)

44.     Plaintiff incorporates and re-alleges Paragraphs 1 through 43 above as if fully set forth herein.

44.     Travelers and other of the Liable Defendants knew that Plaintiff was the sole operator of the vehicle owned by Avon and which vehicle was involved in the subject collision.

45.     Despite such knowledge, Travelers and one or more of the Liable Defendants (Travelers' agent(s), representative(s) and/or employee(s)), discontinued UIM coverage on the subject vehicle without providing Plaintiff (1) with either prior notice of such discontinuance of coverage or (2) a description of the potential effect of such discontinuation should Plaintiff be injured in an automobile collision by an uninsured or underinsured motorist while engaged in the

14

course and scope of her employment with Avon.  Travelers and the Liable Defendant(s) owed a duty

to Plaintiff to make such disclosures, yet failed to do so.

46.     Either or both of such failures constitute the tort of insurance bad faith as prohibited

by New Mexico case law and/or violation(s) of the New Mexico Unfair Insurance Practices Act,

NMSA 1978, Section 59A 16 20, which reads, in part, as follows:

> Unfair claims practices defined and prohibited.
>
> Any and all of the following practices with respect to claims, by an insurer or other person,
> knowingly committed or performed with such frequency as to indicate a general business
> practice, are defined as unfair and deceptive practices and are prohibited:
> ...
>
> C.     failing to adopt and implement reasonable standards for the prompt investigation and
> processing of insureds' claims arising under policies ...
>
> E.     not attempting in good faith to effectuate prompt, fair and equitable settlements of an
> insured's claims in which liability has become reasonably clear ...
>
> G.     compelling insureds to institute litigation to recover amounts due under policy by
> offering substantially less than the amounts ultimately recovered in actions brought by such
> insureds when such insureds have made claims for amounts reasonably similar to amounts
> ultimately recovered;
>
> N.     failing to promptly provide an insured a reasonable explanation of the basis relied on
> in the policy in relation to the facts or applicable law for denial of a claim or for the offer of
> a compromise settlement.

43.     Such failures have caused Plaintiff to suffer actual, compensatory, consequential and

statutory damages and to incur attorneys' fees, for all of which Defendants Travelers and/or Liable

Parties is/are liable.

47.     Said harm and damage inflicted upon Ms. Thompson were undertaken by one or more

of these Defendants intentionally, willfully, maliciously, recklessly, wantonly and/or with gross

15

negligence and/or with deliberate indifference to her rights and feelings, thereby entitling her to an additional award of punitive damages.

**WHEREFORE**, on Count VII, Ms. Thompson requests that judgment be entered against Defendants, jointly and/or severally, awarding her compensatory and punitive damages, together with pre-judgment interest, post-judgment interest, costs and attorneys' fees and such further relief as the Court deems proper.

**COUNT VIII**
**Violation of the New Mexico Unfair Trade Practices Act**
**(Defendants Avon, Travelers and GELCO)**

48.     Plaintiff incorporates and re-alleges Paragraphs 1 through 47 above as if fully set forth herein.

49,     The New Mexico Unfair Trade Practices Act, NMSA 1978, Section 57-12-1, *et seq.*, among other things, makes it unlawful for a business such as Travelers, Avon or GELCO to make false or misleading statements in the ordinary course of their trade or in the regular course of commerce.

50.     Among other things, Avon, Travelers and/or GELCO misled Ms. Thompson into believing that the Avon/GELCO vehicle she was operating was fully insured against the liability of uninsured/underinsured motorists who may cause Ms. Thompson to suffer injury, damage and/or financial harm while she was engaged in the course and scope of her employment with Avon.

51.     Avon's, GELCO's and Travelers' misconduct described above in fact caused Ms. Thompson to suffer injury, damage and financial harm in violation of the New Mexico Unfair Trade Practices Act, to include, but not limited to, in violation of NMSA 1978, Sections 57-12-2(D) and (E) and 57-12-3, entitling Ms. Thompson to recover from these Defendants, in addition to her

16

common law and statutory remedies, treble damages and attorney's fees pursuant to NMSA 1978, Section 57-12-10.

52.     Said harm and damage inflicted upon Ms. Thompson were undertaken by one or more of these Defendants intentionally, willfully, maliciously, recklessly, wantonly and/or with gross negligence and/or with deliberate indifference to her rights and feelings, thereby entitling her to an additional award of punitive damages.

**WHEREFORE**, on Count VIII, Ms. Thompson requests that judgment be entered against Defendants, jointly and/or severally, awarding her compensatory and punitive damages, together with pre-judgment interest, post-judgment interest, costs and attorneys' fees and such further relief as the Court deems proper.

### COUNT IX
### Civil Conspiracy
### (All Defendants)

53.     Plaintiff incorporates and re-alleges all Paragraphs above and below, as if fully set forth herein.

54.     All Defendants and/or each one of them conspired with one or more of the other Defendants to commit one or more of the foregoing violations of law set forth in this Complaint.

55.     Such conspiracy(ies) have been accomplished through one or more overt acts as described above and/or below, and such have proximately caused Ms. Thompson to suffer harm, to include, but not limited to, the loss of her uninsured/underinsured motorist insurance entitlement, severe and extreme emotional distress, pain and suffering and other consequential damages.

56.     Said harm and damage inflicted upon Ms. Thompson were undertaken by one or more of these Defendants intentionally, willfully, maliciously, recklessly, wantonly and/or with gross

negligence and/or with deliberate indifference to her rights and feelings, thereby entitling her to an additional award of punitive damages.

**WHEREFORE,** on Count IX, Ms. Thompson requests that judgment be entered against Defendants, jointly and/or severally, awarding her compensatory and punitive damages, together with pre-judgment interest, post-judgment interest, costs and attorneys' fees and such further relief as the Court deems proper.

**WHEREFORE,** Plaintiff respectfully requests that judgment be entered in her favor and against Defendant(s), jointly and/or severally, upon each and every count set forth above for, wherever applicable, her actual and compensatory damages, for her future and other consequential damages, for punitive damages, for treble damages pursuant to the New Mexico Unfair Trade Practices Act and for attorneys' fees pursuant to the New Mexico Unfair Insurance Practices Act and/or the New Mexico Unfair Trade Practices Act, and for all other relief which the Court may deem to be just and proper in these circumstances.

## COUNT X
### Promissory Estoppel and Unjust Enrichment
### (All Defendants)

57.      Plaintiff incorporates and re-alleges Paragraphs 1 through 56 above as if fully set forth herein.

58.      Defendants made fraudulent promises, and through its control and domination of Ms. Thompson, caused such promises to be made: (a) that were material to transactions between Ms. Thompson and Defendanst; (b) that Defendants did not intend to perform; (c) that Defendant fraudulently intended Ms. Thompson to rely upon; (d) that Ms. Thompson reasonably relied upon; (e) that Defendants did not perform; (f) that Ms. Thompson's reliance upon was a substantial factor

18

in causing damages to Plaintiff; and (g) that caused damage to Plaintiff and the unjust enrichment of the Defendants as described above.

59. The false promises consisted of at least promising Ms. Thompson at the outset that there would be high limits of coverage, including UM/UIM coverage at or over what Ms. Thompson would have been required to have on her own vehicle if she had chosen to use her own vehicle while employed at Avon. Defendants are therefore estopped from refusing to afford Ms. Thompson the full benefit of $300,000.00 in underinsured motorists coverage for the damages she has sustained as a consequence of the subject collision and must disgorge all payments made by Ms. Thompson to Defendants which should have been applied to payment for the underinsured motorist coverage which should have been in effect at the time of the subject collision.

**WHEREFORE**, Plaintiff prays that judgment be entered for Plaintiff and against the Defendants, jointly and/or severally, for the following: compensatory damages, disgorgement of the net value realized by Defendants after ceasing to pay premiums for UM/UIM coverage for Ms. Thompson, punitive damages, pre-judgment interest and for all other relief which the Court may deem to be just and proper in these circumstances.

## COUNT XI
### Fraudulent Misrepresentation and Concealment
### (All Defendants)

60. Plaintiff incorporates and re-alleges Paragraphs 1 through 59 above as if fully set forth herein.

61. Defendants misrepresented and/or concealed from Plaintiff certain facts: (a) that Defendant had a duty to disclose; (b) that Defendants intentionally failed to disclose, that were material, and that Plaintiff could not have reasonably discovered; (c) that by concealing these facts,

19

Defendants intended to deceive Plaintiff; (d) that Plaintiff relied upon Defendants not to conceal, and such reliance was reasonable under the circumstances; (e) that the concealments were a substantial factor in causing damage to Plaintiff; and (f) that caused damages to Plaintiffs as described in paragraphs 1-60 above.

**WHEREFORE**,  Plaintiff prays that judgment be entered for Plaintiff and against the Defendants, jointly and/or severally, for the following: compensatory damages, disgorgement of the net value realized by Defendants after ceasing premiums for UM/UIM coverage for Ms. Thompson, punitive damages, pre-judgment interest and for all other relief which the Court may deem to be just and proper in these circumstances.

### COUNT XII
### For Punitive Damages and Injunctive Relief
### (All Defendants)

62.     Plaintiff  incorporates and re-alleges Paragraphs 1 through 61 above as if fully set forth herein.

63.     All of Defendants' aforesaid acts and/or omissions, whether committed jointly and/or severally, have been perpetrated willfully, wantonly and/or with reckless disregard for Ms. Thompson's rights and feelings.

64.     Ms. Thompson is therefore entitled to recover from Defendants, jointly and/or severally, in addition to her actual and compensatory damages, an appropriate amount for punitive damages, in order to punish Defendants for their egregious misconduct and/or to set an example for society and deter others from causing similar harm.



65.    Injunctive relief may also be appropriate in order to protect and/or compensate retroactively and/or prospectively those employees of Avon who may have already encountered or will encounter similar circumstances and harm resulting form Defendants' aforesaid misconduct.

66.    Plaintiff Thompson also reserves the right to expand this lawsuit into a class action should Plaintiff's investigation into Defendants' misconduct reveal harm to those employees of Avon with circumstances similar to those experienced by Ms. Thompson as set forth above.

**WHEREFORE**,  Plaintiff prays that judgment be entered for Plaintiff and against the Defendants, jointly and/or severally, for an appropriate amount of punitive damages, pre-judgment interest and for all other related relief, to include, but not limited to, injunctive relief, which the Court may deem to be just and proper in these circumstances.

Respectfully submitted,

THE BENNETT LAW GROUP

By:  _/s/ Merit Bennett_____
    Merit Bennett, Esq.
    460 St. Michael's Drive, Suite 703
    Santa Fe, New Mexico  87505
    (505) 983-9834
    *Attorney for Plaintiff*

STATE OF NEW MEXICO
## OFFICE OF SUPERINTENDENT OF INSURANCE
Mailing Address: P.O. Box 1689, Santa Fe, NM 87504-1689
Physical Address: 1120 Paseo de Peralta, Room 428, Santa Fe, NM 87501
Main Phone: (505) 827-4601; Main Fax (505) 827-4734; Toll Free: 1-855-4-ASK-OSI
www.osi.state.nm.us

**SUPERINTENDENT OF**
**INSURANCE**
John G. Franchini – (505) 827-4299

**Service of Process**
Room 432
(505) 827-4241

**DEPUTY SUPERINTENDENT**
Robert Doucette – (505) 827-4439

July 18, 2016

Travelers Casualty & Surety Co.
C/O Corporation Service Company
123 E. Marcy St. Ste. 101
Santa Fe, NM 87501

Re: Patricia Thompson Vs Avon Products, Inc.; The Travelers Companies, dba Travelers
Insurance Company; GE Capital Fleet Services dba GEICO Corporation; and Yet-to-be
Identified Business Entity(ies) and/or Individual(s) Travelers Casualty & Surety Co.
C/O Corporation Service Company
123 E. Marcy St. Ste. 101
Santa Fe, NM 87501,
D117CV2016-00221

Dear Mr. President:

In accordance with the provisions of NMSA 1978, Sections 59A-5-31 & 59A-32, enclosed is a
copy of a Summons, Complaint for Bad Faith Breach of Contract and the Covenant of Good
Faith and Fair Dealing, Tortious Interference with Contract, Intentional Infliction of Emotional
Distress, Negligence, Breach of Contract and Duty to Third Party Beneficiary, *Prima Facie*
Tort, Promissory Estoppel and Unjust Enrichment, Fraudulent Misrepresentation and
Concealment, Insurance Bad Faith and Violation of the New Mexico Unfair Insurance Practices
Act, Violation of the New Mexico Unfair Trade Practices Act, Civil Conspiracy and For
Punitive Damages and Injunctive Relief, to Defendant The Travelers Companies, dba Travelers
Insurance Company in the State of New Mexico on the above styled cause, Service has been
accepted on your behalf as of July 18, 2016.

Respectfully,

*John D. Franchini*

**EXHIBIT**
**2**

John G. Franchini, Superintendent

Enclosure

CERTIFIED MAIL  7010 0290 0002 3837 7247

# NYS Department of State

## Division of Corporations

### Entity Information

The information contained in this database is current through August 11, 2016.

Selected Entity Name: AVON PRODUCTS, INC.
Selected Entity Status Information

|  |  |
|---|---|
| **Current Entity Name:** | AVON PRODUCTS, INC. |
| **DOS ID #:** | 12100 |
| **Initial DOS Filing Date:** | JANUARY 27, 1916 |
| **County:** | NEW YORK |
| **Jurisdiction:** | NEW YORK |
| **Entity Type:** | DOMESTIC BUSINESS CORPORATION |
| **Current Entity Status:** | ACTIVE |

Selected Entity Address Information

**DOS Process (Address to which DOS will mail process if accepted on behalf of the entity)**

AVON PRODUCTS, INC.
777 THIRD AVENUE
NEW YORK, NEW YORK, 10017-1376

**Chief Executive Officer**

SHERILYN S MCCOY
777 3RD AVE
NEW YORK, NEW YORK, 10017

**Principal Executive Office**

AVON PRODUCTS, INC.
777 3RD AVE
NEW YORK, NEW YORK, 10017

**Registered Agent**

NONE

This office does not record information regarding the
names and addresses of officers, shareholders or



EXHIBIT
3

directors of nonprofessional corporations except the
chief executive officer, if provided, which would be
listed above. Professional corporations must include the
name(s) and address(es) of the initial officers, directors,
and shareholders in the initial certificate of
incorporation, however this information is not recorded
and only available by viewing the certificate.

## *Stock Information

| # of Shares | Type of Stock | $ Value per Share |
|---|---|---|
| 25000000 | Par Value | 1 |
| 1500000000 | Par Value | .25 |

*Stock information is applicable to domestic business corporations.

## Name History

| Filing Date | Name Type | Entity Name |
|---|---|---|
| DEC 30, 1950 | Actual | AVON PRODUCTS, INC. |
| MAR 21, 1946 | Actual | AVON ALLIED PRODUCTS, INC. |
| DEC 31, 1930 | Actual | ALLIED PRODUCTS INC. |
| JAN 27, 1916 | Actual | CALIFORNIA PERFUME COMPANY, INC. |

A **Fictitious** name must be used when the **Actual** name of a foreign entity is unavailable for use in New York
State. The entity must use the fictitious name when conducting its activities or business in New York State.

NOTE: New York State does not issue organizational identification numbers.

Search Results   New Search

Services/Programs   |   Privacy Policy   |   Accessibility Policy   |   Disclaimer   |   Return to DOS
Homepage   |   Contact Us

8/12/2016    Restated Certificate of Incorporation of Avon Products, Inc.

Case 1:16-cv-00924-KBM-JHR   Document 1-1   Filed 08/12/16   Page 26 of 33

EX-3.1 2 dex31.htm RESTATED CERTIFICATE OF INCORPORATION OF AVON PRODUCTS, INC.

**Exhibit 3.1**

## RESTATED CERTIFICATE OF INCORPORATION

### OF

### AVON PRODUCTS, INC.

#### Under Section 807 of the Business Corporation Law

We, ANDREA JUNG, the Chairman of the Board and Chief Executive Officer of AVON PRODUCTS, INC. (the "Corporation") and KIM K.W. RUCKER, Senior Vice President, General Counsel, Corporate Secretary and Chief Compliance Officer of the Corporation, do hereby certify as follows:

1. The name of the Corporation is AVON PRODUCTS, INC. and the name under which the Corporation was formed is California Perfume Company, Inc.

2. The Certificate of Incorporation was filed by the Department of State of the State of New York on January 27, 1916.

3. The Restated Certificate of Incorporation is hereby amended to effect amendments authorized by the Business Corporation Law.

4. To accomplish the foregoing amendments:

a)    Article V, which permitted directors to be removed from office for cause by an affirmative vote of the holders of eighty percent (80%) of the outstanding shares of stock of the Corporation, has been amended to permit directors to be removed from office for cause by an affirmative vote of the holders of a majority of the outstanding shares of stock of the Corporation; and

b)    Article VII, which included provisions addressing the approval of certain business combination transactions with Interested Shareholders, has been amended to eliminate such provisions.

5. The amendments referred to in Paragraph 3 above were authorized by the affirmative vote of at least 80% of the voting power of the Corporation's outstanding common stock at the May 5, 2011 Annual Meeting of Shareholders.

6. The text of the Certificate of Incorporation of the Corporation is hereby restated and amended to read as herein set forth in full:

**ARTICLE I:** The corporate name is

AVON PRODUCTS, INC.

8/12/2016       Restated Certificate of Incorporation of Avon Products, Inc.

Case 1:16-cv-00924-KBM-JHR   Document 1-1   Filed 08/12/16   Page 27 of 33

**ARTICLE II:** The purposes for which the Corporation is formed are:

To develop, manufacture, produce, provide, operate, distribute and deal in and with services, property and goods of all kinds including without limitation engaging in the manufacture and distribution of cosmetics and toiletries.

To engage in any lawful act or activity for which corporations may be organized under the Business Corporation Law of the State of New York.

**ARTICLE III:** The total number of shares of all classes of capital stock which the Corporation shall have authority to issue is 1,525,000,000 shares, divided into two classes consisting of 1,500,000,000 shares of Common Stock, par value $.25 per share (the "Common Stock"), and 25,000,000 shares of Preferred Stock, par value $1.00 per share (the "Preferred Stock").

The shares of authorized Common Stock of the Corporation shall be identical in all respects and shall have equal rights and privileges.

The Board of Directors shall have authority by resolution to issue the shares of Preferred Stock from time to time on such terms as it may determine and to divide the Preferred Stock into one or more classes or series and, in connection with the creation of any such class or series, to determine and fix by the resolution or resolutions providing for the issuance of shares thereof the designation, powers and relative participating, optional, or other special rights of such class or series, and the qualifications, limitations or restrictions thereof, to the full extent now or hereafter permitted by law.

The holders of capital stock of the Corporation shall not have any preemptive rights.

**ARTICLE IIIA:** Series B Junior Participating Preferred Stock:

Section 1. <u>Designation and Amount</u>. The shares of such series shall be designated as "Series B Junior Participating Preferred Stock" (the "Series B Preferred Stock") and the number of shares constituting the Series B Preferred Stock shall be 2,000,000. Such number of shares may be increased or decreased by resolution of the Board of Directors; provided, that no decrease shall reduce the number of shares of Series B Preferred Stock to a number less than the number of shares then outstanding plus the number of shares reserved for issuance upon the exercise of outstanding options, rights or warrants or upon the conversion of any outstanding securities issued by the Corporation convertible into Series B Preferred Stock.

Section 2. <u>Dividends and Distributions</u>.

(A) Subject to the rights of the holders of any shares of any series of Preferred Stock (or any similar stock) ranking prior and superior to the Series B Preferred

Page 2 of 8

8/12/2016     Restated Certificate of Incorporation of Avon Products, Inc.

Case 1:16-cv-00924-KBM-JHR    Document 1-1    Filed 08/12/16    Page 28 of 33

Stock with respect to dividends, the holders of shares of Series B Preferred Stock, in preference to the holders of Common Stock, par value $0.25 per share (the "Common Stock"), of the Corporation, and of any other junior stock, shall be entitled to receive, when, as and if declared by the Board of Directors out of funds legally available for the purpose, quarterly dividends payable in cash on the first day of March, June, September and December in each year (each such date being referred to herein as a "Quarterly Dividend Payment Date"), commencing on the first Quarterly Dividend Payment Date after the first issuance of a share or fraction of share of Series B Preferred Stock, in an amount per share (rounded to the nearest cent) equal to the greater of (a) $10 or (b) subject to the provision for adjustment hereinafter set forth, 100 times the aggregate per share amount of all cash dividends, and 100 times the aggregate per share amount (payable in kind) of all non-cash dividends or other distributions, other than a dividend payable in shares of Common Stock or a subdivision of the outstanding shares of Common Stock (by reclassification or otherwise), declared on the Common Stock since the immediately preceding Quarterly Dividend Payment Date or, with respect to the first Quarterly Dividend Payment Date, since the first issuance of any share or fraction of a share of Series B Preferred Stock. In the event the Corporation shall at any time declare or pay any dividend on the Common Stock payable in shares of Common Stock, or effect a subdivision or combination or consolidation of the outstanding shares of Common Stock (by reclassification or otherwise than by payment of a dividend in shares of Common Stock) into a greater or lesser number of shares of Common Stock, then in each such case the amount to which holders of shares of Series B Preferred Stock were entitled immediately prior to such event under clause (b) of the preceding sentence shall be adjusted by multiplying such amount by a fraction, the numerator of which is the number of shares of Common Stock outstanding immediately after such event and the denominator of which is the number of shares of Common Stock that were outstanding immediately prior to such event.

    (B) The Corporation shall declare a dividend or distribution on the Series B Preferred Stock as provided in paragraph (A) of this Section immediately after it declares a dividend or distribution on the Common Stock (other than a dividend payable in shares of Common Stock); provided that, in the event no dividend or distribution shall have been declared on the Common Stock during the period between any Quarterly Dividend Payment Date and the next subsequent Quarterly Dividend Payment Date, a dividend of $10 per share on the Series B Preferred Stock shall nevertheless be payable on such subsequent Quarterly Dividend Payment Date.

    (C) Dividends shall begin to accrue and be cumulative on outstanding shares of Series B Preferred Stock from the Quarterly Dividend Payment Date next preceding the date of issue of such shares, unless the date of issue of such shares is prior to the record date for the first Quarterly Dividend Payment Date, in which case dividends on such shares shall begin to accrue from the date of issue of such shares, or unless the date of issue is a Quarterly Dividend Payment Date or is a date after the record date for the determination of holders of shares of Series B Preferred Stock entitled to receive a quarterly dividend and before such Quarterly Dividend Payment Date, in either of which

Page 3 of 8

8/12/2016     Restated Certificate of Incorporation of Avon Products, Inc.

Case 1:16-cv-00924-KBM-JHR    Document 1-1    Filed 08/12/16    Page 29 of 33

events such dividends shall begin to accrue and be cumulative from such Quarterly Dividend Payment Date. Accrued but unpaid dividends shall not bear interest. Dividends paid on the shares of Series B Preferred Stock in an amount less than the total amount of such dividends at the time accrued and payable on such shares shall be allocated pro rata on a share-by-share basis among all such shares at the time outstanding. The Board of Directors may fix a record date for the determination of holders of shares of Series B Preferred Stock entitled to receive payment of a dividend or distribution declared thereon, which record date shall be not more than 60 days prior to the date fixed for the payment thereof.

Section 3. Voting Rights. The holders of shares of Series B Preferred Stock shall have the following voting rights:

(A) Subject to the provision for adjustment hereinafter set forth, each share of Series B Preferred Stock Shall entitle the holder thereof to 100 votes on all matters submitted to a vote of the stockholders of the Corporation. In the event the Corporation shall at any time declare or pay any dividend on the Common Stock payable in shares of Common Stock, or effect a subdivision or combination or consolidation of the outstanding shares of Common Stock (by reclassification or otherwise than by payment of a dividend in shares of Common Stock) into a greater or lesser number of shares of Common Stock, then in each such case the number of votes per share to which holders of shares of Series B Preferred Stock were entitled immediately prior to such event shall be adjusted by multiplying such number by a fraction, the numerator of which is the number of shares of Common Stock outstanding immediately after such event and the denominator of which is the number of shares of Common Stock that were outstanding immediately prior to such event.

(B) Except as otherwise provided herein, in any other Certificate of Amendment creating a series of Preferred Stock or any similar stock, or by law, the holders of shares of Series B Preferred Stock and the holders of shares of Common Stock and any other capital stock of the Corporation having general voting rights shall vote together as one class on all matters submitted to a vote of stockholders of the Corporation.

(C) Except as set forth herein, or as otherwise provided by law, holders of Series B Preferred Stock shall have no special voting rights and their consent shall not be required (except to the extent they are entitled to vote with holders of Common Stock as set forth herein) for taking any corporate action.

Section 4. Certain Restrictions.

(A) Whenever quarterly dividends or other dividends or distributions payable on the Series B Preferred Stock as provided in Section 2 are in arrears, thereafter and until all accrued and unpaid dividends and distributions, whether or not declared, on shares of Series B Preferred Stock outstanding shall have been paid in full, the

**Page 4 of 8**

8/12/2016    Restated Certificate of Incorporation of Avon Products, Inc.

Case 1:16-cv-00924-KBM-JHR   Document 1-1   Filed 08/12/16   Page 30 of 33

Corporation shall not:

(i) declare or pay dividends, or make any other distributions, on any shares of stock ranking junior (either as to dividends or upon liquidation, dissolution or winding up) to the Series B Preferred Stock;

(ii) declare or pay dividends, or make any other distributions, on any shares of stock ranking on a parity (either as to dividends or upon liquidation, dissolution or winding up) with the Series B Preferred Stock, except dividends paid ratably on the Series B Preferred Stock and all such parity stock on which dividends are payable or in arrears in proportion to the total amounts to which the holders of all such shares are then entitled;

(iii) redeem or purchase or otherwise acquire for consideration shares of any stock ranking junior (either as to dividends or upon liquidation, dissolution or winding up) to the Series B Preferred Stock, provided that the Corporation may at any time redeem, purchase or otherwise acquire shares of any such junior stock in exchange for shares of any stock of the Corporation ranking junior (either as to dividends or upon dissolution, liquidation or winding up) to the Series B Preferred Stock; or

(iv) redeem or purchase or otherwise acquire for consideration any shares of Series B Preferred Stock, or any shares of stock ranking on a parity with the Series B Preferred Stock, except in accordance with a purchase offer made in writing or by publication (as determined by the Board of Directors) to all holders of such shares upon such terms as the Board of Directors, after consideration of the respective annual dividend rates and other relative rights and preferences of the respective series and classes, shall determine in good faith will result in fair and equitable treatment among the respective series or classes.

(B) The Corporation shall not permit any subsidiary of the Corporation to purchase or otherwise acquire for consideration any shares of stock of the Corporation unless the Corporation could, under paragraph (A) of this Section 4, purchase or otherwise acquire such shares at such time and in such manner.

Section 5. Reacquired Shares. Any shares of Series B Preferred Stock purchased or otherwise acquired by the Corporation in any manner whatsoever shall be retired and cancelled promptly after the acquisition thereof. All such shares shall upon their cancellation become authorized but unissued shares of Preferred Stock and may be reissued as part of a new series of Preferred Stock subject to the conditions and restrictions on issuance set forth herein, in the Certificate of Incorporation or in any other Certificate of Amendment creating a series of Preferred Stock or any similar stock or as otherwise required by law.

Section 6. Liquidation, Dissolution or Winding Up. Upon any liquidation, dissolution or winding up of the Corporation, no distribution shall be made (1) to the

**Page 5 of 8**

8/12/2016    Restated Certificate of Incorporation of Avon Products, Inc.

Case 1:16-cv-00924-KBM-JHR    Document 1-1    Filed 08/12/16    Page 31 of 33

holders of shares of stock ranking junior (either as to dividends or upon liquidation, dissolution or winding up) to the Series B Preferred Stock unless, prior thereto, the holders of shares of Series B Preferred Stock shall have received $100 per share, plus an amount equal to accrued and unpaid dividends and distributions thereon, whether or not declared, to the date of such payment provided that the holders of shares of Series B Preferred Stock shall be entitled to receive an aggregate amount per share, subject to the provision for adjustment hereinafter set forth, equal to 100 times the aggregate amount to be distributed per share to holders of shares of Common Stock, or (2) to the holders of shares of stock ranking on a parity (either as to dividends or upon liquidation, dissolution or winding up) with the Series B Preferred Stock, except distributions made ratably on the Series B Preferred Stock and all such parity stock in proportion to the total amounts to which the holders of all such shares are entitled upon such liquidation, dissolution or winding up. In the event the Corporation shall at any time declare or pay any dividend on the Common Stock payable in shares of Common Stock, or effect a subdivision or combination or consolidation of the outstanding shares of Common Stock (by reclassification or otherwise than by payment of a dividend in shares of Common Stock) into a greater or lesser number of shares of Common Stock, then in each such case the aggregate amount to which holders of shares of Series B Preferred Stock were entitled immediately prior to such event under the proviso in clause (1) of the preceding sentence shall be adjusted by multiplying such amount by a fraction, the numerator of which is the number of shares of Common Stock outstanding immediately after such event and the denominator of which is the number of shares of Common Stock that were outstanding immediately prior to such event.

Section 7. <u>Consolidation, Merger, etc.</u> In case the Corporation shall enter into any consolidation, merger, combination or other transaction in which the shares of Common Stock are exchanged for or changed into other stock or securities, cash and/or any other property, then in any such case each share of Series B Preferred Stock shall at the same time be similarly exchanged or changed into an amount per share, subject to the provision for adjustment hereinafter set forth, equal to 100 times the aggregate amount of stock, securities, cash and/or any other property (payable in kind), as the case may be, into which or for which each share of Common Stock is changed or exchanged. In the event the Corporation shall at any time declare or pay any dividend on the Common Stock payable in shares of Common Stock, or effect a subdivision or combination or consolidation of the outstanding shares of Common Stock (by reclassification or otherwise than by payment of a dividend in shares of Common Stock) into a greater or lesser number of shares of Common Stock, then in each such case the amount set forth in the preceding sentence with respect to the exchange or change of shares of Series B Preferred Stock shall be adjusted by multiplying such amount by a fraction, the numerator of which is the number of shares of Common Stock outstanding immediately after such event and the denominator of which is the number of shares of Common Stock that were outstanding immediately prior to such event.

Section 8. <u>No Redemption</u>. The shares of Series B Preferred Stock shall not be redeemable.

**Page 6 of 8**

8/12/2016                    Restated Certificate of Incorporation of Avon Products, Inc.

Case 1:16-cv-00924-KBM-JHR   Document 1-1   Filed 08/12/16   Page 32 of 33

Section 9. <u>Rank</u>. The Series B Preferred Stock shall rank, with respect to the payment of dividends and the distribution of assets, junior to all series of any other class of the Corporation's Preferred Stock.

Section 10. <u>Amendment</u>. The Certificate of Incorporation of the Corporation shall not be amended in any manner which would materially alter or change the powers, preferences or special rights of the Series B Preferred Stock so as to affect them adversely without the affirmative vote of the holders of at least two-thirds of the outstanding shares of Series B Preferred Stock, voting together as a single class.

**ARTICLE IV:** The office of the Corporation is to be located in the City and County of New York, State of New York.

**ARTICLE V:** The number of directors of the Corporation shall be not less than ten (10) nor more than twenty (20). The number of directors to be chosen within said maximum and minimum limits shall be determined in the manner prescribed by the By-Laws.

Directors shall be elected annually at the annual meeting of shareholders, each to hold office until the next succeeding annual meeting or until his or her successor is elected and qualified. Any vacancies in the Board of Directors, by reason of an increase in the number of directors or otherwise, shall be filled solely by the Board of Directors, by majority vote of the directors then in office, though less than a quorum, and any director so elected shall hold office until the next succeeding annual meeting of shareholders. No decrease in the number of directors shall shorten the term of any incumbent director.

Any director may be removed from office as a director but only for cause by the affirmative vote of the holders of a majority of the combined voting power of the then outstanding shares of stock of the Corporation entitled to vote generally in the election of directors, voting together as a single class.

The directors need not be shareholders of the Corporation.

**ARTICLE VI:** Except as otherwise required by law or by the Restated Certificate of Incorporation, each director shall be elected by the vote of the majority of the votes cast with respect to the director at any meeting for the election of directors at which a quorum is present; provided, however, that if the number of nominees exceeds the number of directors to be elected, the directors shall be elected by the vote of a plurality of the shares represented in person or by proxy at any such meeting and entitled to vote on the election of directors. For purposes of this Article VI, a majority of the votes cast shall mean that the number of shares voted "for" a director's election exceeds 50% of the votes cast with respect to that director. Votes cast shall include votes to withhold authority and exclude abstentions with respect to that director's election.

Page 7 of 8

8/12/2016       Restated Certificate of Incorporation of Avon Products, Inc.

Case 1:16-cv-00924-KBM-JHR    Document 1-1    Filed 08/12/16    Page 33 of 33

**ARTICLE VII:** The Secretary of State is designated as the agent of the Corporation upon whom process in any action or proceeding against it may be served; and the address to which the Secretary of State shall mail a copy of any process against the Corporation which may be served upon him pursuant to law is:

> 1345 Avenue of the Americas
> New York, NY 10105-0196

**ARTICLE VIII:** No person who is or was a director of the Corporation shall have personal liability to the Corporation or its shareholders for damages for any breach of duty in such capacity, provided that the foregoing shall not limit the liability of any such person (i) if a judgment or other final adjudication adverse to him establishes that his acts or omissions were in bad faith or involved intentional misconduct or a knowing violation of law or that he personally gained, in fact, a financial profit or other advantage to which he was not legally entitled or that his acts violated Section 719 of the Business Corporation Law of New York or, (ii) for any act or omission occurring prior to the adoption of this Article VIII. No amendment to or repeal of this Article VIII shall apply to or have any effect on the liability or alleged liability of any such person to the Corporation for or with respect to any acts or omissions of such person occurring prior to such amendment or repeal. If the Business Corporation Law of New York is amended hereafter to expand or limit the liability of a director, then the liability of a person who is or was a director of the Corporation shall be deemed to be expanded to the extent required or limited to the extent permitted by the Business Corporation Law of New York, as so amended.

This restatement of the Certificate of Incorporation was authorized by the Board of Directors of the Corporation and the affirmative vote of at least 80% of the voting power of the Corporation's outstanding common stock.

IN WITNESS WHEREOF, we have subscribed this certificate as of the 5th day of May, 2011 and we affirm the statements contained herein as true under the penalties of perjury.

/s/ Andrea Jung
Andrea Jung, Chairman of the Board and
Chief Executive Officer

/s/ Kim K.W. Rucker
Kim K.W. Rucker
Senior Vice President, General Counsel, Corporate
Secretary and Chief Compliance Officer

Page 8 of 8